*Markham & Patterson*, for plaintiff in error.

*W. M. Van Liew*, for defendants in error.

------ ►●◄ ------

## THE SAN JUAN AND ST. LOUIS MINING AND SMELTING CO. *v.* FINCH *et al.*

(*Supreme Court of Colorado, April Term, 1882—Error to the District Court of Ouray County.*)

1. A VOID JUDGMENT. A judgment rendered against a defendant who has neither been summoned nor appeared in the cause is not erroneous or voidable merely, but absolutely void and of no effect.

2. INJUNCTION. Proceedings under such void judgment may be prevented by injunction.

2. SAME—PROCEEDINGS IN SUIT FOR. In a suit to enjoin proceedings on a judgment on the ground that it is void for want of jurisdiction of the Court rendering it, the only question is as to the validity of the judgment sought to be enjoined. A dissolution of the injunction is in effect to hold the judgment valid, and it is irregular thereafter to render another judgment for the same cause of action, else there may be two judgments for the same cause.

4. MECHANICS' LIENS—PROCEEDINGS TO ENFORCE, STATUTORY AND EQUITABLE. Proceedings to enforce mechanics' liens are statutory, and must be in strict, or, at least, substantial conformity with the statute. Such proceedings are also equitable, and governed by the rules of chancery practice. Hence resort to injunction to restrain action thereunder is not a release of errors in the proceedings enjoined. Moreover, the rule, even at law, does not apply to judgments which are void.

5. CROSS COMPLAINT. In an action for injunction to restrain proceedings under a void judgment, the only issue that can be raised is the validity of such judgment, and matters of fact touching the merits of the original suit cannot be set up by way of cross-bill.

6. SAME. A cross complaint must set forth the ground relied upon for affirmative relief with the same strictness as is required in an original complaint.

STONE, J. Suit was brought against the plaintiff in error, the San Juan and St. Louis Mining and Smelting Company, in the County Court of Ouray county, by Henry Gardner, one of the defendants in error, claiming an amount due for work done under a contract with said company (which was averred to be a corporation duly organized), in the erection of buildings upon certain premises described, and praying for judgment, and a lien upon said premises, under the statutory lien law, and that the said premises be sold to satisfy the judgment prayed. That portion of the summons in the case which is important to be considered here is as follows:

"State of Colorado, Ouray county, ss. In the County Court within the county and State aforesaid. Henry Gardner, plaintiff, *v.* the San Juan and St. Louis Mining and Smelting Company, R. F. Long, president, W. H. Strout, secretary, and Charles H. Rawles, defendants. The people of the State of Colorado send greeting to R. F. Long, W. H. Strout and Charles H. Rawles, defendants above named: You are hereby required to appear, in an action brought against you by the above named plaintiff, in the County Court within and for the county of Ouray, and State of Colorado, and to answer the complaint filed therein," etc.

The return of the sheriff certifies that service was made by delivering copies of the writ to each of the said persons, Long, Strout and Rawles.

Complaints were afterwards filed in the case by Waldron, Lewis, Hammon and Hotchkiss, as interpleading claimants, for labor and materials furnished, as alleged, upon like contracts with the said Mining and Smelting Company.

Upon default of appearance by either the company or any of the parties served, judgments were rendered by the County Court in favor of the claimants in each case, aggregating near $4,000, which judgments were declared liens upon the premises of said corporation, and separate executions were issued upon each judgment, commanding the sheriff to make the same out of " the lands and tenements, goods and chattels of the San Juan and St. Louis Mining and Smelting Company," and, afterwards, the property of the said company was advertised for sale by the sheriff, to satisfy the judgments rendered, as aforesaid. Thereupon the plaintiff in error presented to the Judge of the District Court for said county a petition for injunction, praying to have the judgment and decree of the County Court set aside, and that Finch, the sheriff, be restrained and enjoined from selling the said premises by virtue of the executions issued upon the decree or judgment rendered in the case.

A preliminary injunction was awarded and issued, and afterwards, the cause coming on for hearing at the ensuing term, the injunction theretofore issued was dissolved, and judgments were rendered in favor of each of the defendants Gardner, Hammon, Lewis, Waldron and Hotchkiss for the several amounts claimed by each, the same as in the County Court, and the premises of the plaintiff company, as described, were ordered to be sold, to satisfy said judgments, if not paid in ten days.

To reverse the judgment of the Court below, the following errors are assigned:

"*First*—The proceedings recited, as in the County Court of Ouray county, were utterly void and of no effect, for the reasons stated in the complaint, and therefore the District Court erred in dissolving the preliminary injunction.

"*Second*—The Court erred in not decreeing that a perpetual injunction issue to restrain all proceedings under the said void judgments of said County Court of Ouray county.

"*Third*—The Court erred in overruling the demurrer to the answers and cross-bills of the defendants.

"*Fourth*—The Court erred in ordering the appellant to plead to said cross-complaints, while demurrers thereto remained undisposed of.

"*Fifth*—The Court erred in ordering appellant to plead instanter.

"*Sixth*—The Court erred in giving final judgment upon the said cross-complaints, without disposing of the issues raised by the original complaint.

"*Seventh*—The Court erred in rendering personal judgment against appellant, and the said judgment is, in other respects, erroneous.

"*Eighth*—The Court erred in proceeding to a hearing of said cross-complaints, and rendering judgment thereon, without notice to the other lien claimants, as required by law.

"*Ninth*—If the judgments of the County Court of Ouray county were void, the District Court should so have decreed. If they were not void, then the District Court erred in rendering new judgments upon causes already adjudicated.

"*Tenth*—There is no statutory redemption from decrees of sale in mechanic's lien cases, and therefore the time for payment allowed by the District Court was unconscionably short."

The first, second and ninth assignments may be considered together, as going to the objection against the judgment upon jurisdictional grounds.

The issue tendered by the plaintiff in error in the District Court was not whether there was sufficient proof in support of the several claims to sustain the decrees or judgments rendered thereon in the County Court, but whether such judgments were not void for the reasons set out in the complaint or petition for injunction. This petition, as brought up by the record, sets forth so much of the proceedings in the County Court, as serves to show fully the matters complained of. This shows that the corporation sued, and against which the lien foreclosures were prayed, was not served with process, never entered its appearance; that no summons was, in fact, issued directed to it, and that it was not before the Court for any purpose. The summons was issued against Long, Strout and Rawles, which persons are thereby informed, that if they fail to appear and answer, judgment will be taken against them.

Since the County Court, by the service of this summons to the three persons named therein, acquired no jurisdiction over the corporation sued, the default taken against it was without warrant of law, and the judgments or decrees rendered thereupon were unauthorized and void.

Hence, respecting the action of the District Court, no reason is perceived for dissolving the injunction, or for not perpetuating it. The want of service on the company affirmatively appears by the record, and in such case the jurisdiction of the County Court did not attach. Freeman on Judgments, Sec. 125; *Clark* v. *Thompson*, 47 Ill., 25; *Gilpin* v. *Page*, 18 Wall., 365; *Clayton* v. *Clayton*, 4 Cal., 416.

That a judgment rendered against a party not before the Court is invalid, is a jurisdictional principle of elementary familiarity.

And that a Court of Chancery may interpose to enjoin the execution of a judgment rendered against a party without service of process upon him, by reason whereof he does not appear or make defense to the action, is well settled by weight of authorities. A distinction is taken in some of the books between cases where the record affirmatively shows a want of service, and cases where the record merely omits to show the service, leaving the service to be presumed, *prima facie;* but where, as is the case before us, the failure of service is affirmatively shown, and, consequently, no appearance made, the judgment is void beyond question. In such cases it is clear that the judgment may be enjoined. *Bell* v. *Williams,* 1 Head., 229; *Caruthers* v. *Hartsfield*, 3 Yerg., 366; *Ridgeway* v. *Bank of Tenn.*, 30 Tenn., 523; *Robinson* v. *Reed's Exr.*, 50 Ala., 70; *Blakeslee* v. *Murphy*, 44 Conn., 193; *Connell* v. *Stelson*, 33 Iowa, 149; *Chambers* v. *Bridge Manf'tory*, 16 Kas., 270; *Probst* v. *Meadows*, 13 Ill., 169; *G. T. N. & T. Co.* v. *Schinner*, 44 Ill., 107; *Hickey* v. *Stone*, 60 Ill., 459; *Graer* v. *Hess,* 37 Ind., 193; *Nicholson* v. *Stephens*, 47 Ind., 85; *Earl et al.* v. *Matheny*, 60 Ind., 202; 1 Smith's Lead. Cas. (7 Am. Ed.), 1119, 1128, 1144; 2 W. & T. Lead Cas. in Eq., 1370.

In the Tennessee cases, above cited, and in some others, it is held that the issuance of the injunction is not dependent upon whether the complainant has a defense to the action wherein

the judgment is sought to be enjoined; and in the Kansas case of *Chambers* v. *Bridge Manufactory, supra,* the judgment was perpetually enjoined, although it appeared regular and valid on its face, the return of the sheriff as to service being allowed to be impeached, by showing that the person served was not at the time an officer of the corporation sued. To the same effect, in the cases of *Ridgeway* v. *Bank of Tenn.* and *Hickey* v. *Stone, supra.* Without going to the same extent, all these authorities support the general rule in the case of a judgment clearly void.

A few cases are found which hold a contrary view, but, for the most part, are decided upon the circumstances of the particular case, and not upon authority. *Sanchez* v. *Carriaga,* 3 Cal., 170; *Gregory* v. *Ford,* 14 Cal., 139; *Gates* v. *Lane,* 49 Cal., 266; *Parsons* v. *Nutting,* 45 Iowa, 404; *Crandell* v. *Bacon,* 20 Wis., 639; *Hart* v. *Lazarou,* 46 Ga., 396.

In the case of *Gates* v. *Lane, supra,* the refusal to enjoin was put on the ground that the proper remedy was by motion to stay execution, while, *per contra,* the cases of *Caruthers* v. *Hartsfield, Blakeslee* v. *Murphy,* and *Connell* v. *Stelson, supra,* held that a concurrent legal remedy is not always sufficient ground for refusing to enjoin the judgment.

When the judgment is erroneous merely, or only voidable and not void, a different rule applies, according to the equities of the case.

The issue tendered by the bill of plaintiff for injunction being the validity of the County Court judgments, could have been properly met by demurrer to the bill or by motion to dissolve the writ. The motion, however, upon which the writ was dissolved was based upon other grounds than the validity of the County Court proceedings. But the dissolution of the injunction left the County Court proceedings standing just as they were before they were enjoined. If considered valid, the bill should have been dismissed, and this would properly have ended all that the District Court was authorized to do in the case. If considered invalid, then the injunction should have been made perpetual before proceeding, as the District Court did, to render new judgments in the case. To dissolve the injunction was, in effect, to hold the judgment of the County

Court valid, and the property subject to the process issued thereon. Hence, it was irregular to thereafter render another judgment for the same cause of action, thus subjecting the property of plaintiff to liability for the satisfaction of both judgments. If the District Court did not err, then there are two several and distinct valid judgments subsisting against the plaintiff for one and the same cause of action.

But it is insisted by counsel for defendants that the issuance of the writ of injunction operated as a release of all errors, if there were any, in the proceedings enjoined. While the rule here invoked is true when applied to proceedings *at law* which are enjoined, it is not believed to be applicable to proceedings in chancery, or those in their nature equitable. The rule is a statutory one (Code, Sec. 125,) and the reason for it is clearly and logically set forth in the case of *McConnell* v. *Ayres*, 3 Scam., 312, and is pertinent, since our statute declaring this rule was taken from that of Illinois.

Besides, there is another reason for the inapplicability of the rule here; in this case the judgment is not merely erroneous, but void, and hence unaffected by the rule which, when applicable, operates upon mere errors.

In this connection, however, we may observe, respecting a point mooted by counsel in their briefs, that the statutory proceedings to enforce rights under the mechanics' lien law, are in their nature equitable, and prior to our present Code practice were administered by the chancery side of the Court, and were governed by the rules of chancery practice. *Clear Creek, etc., M. Co.* v. *Root*, 1 Col., 374; *Decker et al.* v. *Myles*, 4 Col, 558; 1 Col. Law Reporter, 142.

The distinctive rules and principles applicable to legal and equitable rights and remedies as heretofore distinguished are unaffected by the abolition of forms under the Code practice.

The third, fourth, fifth and sixth assignments of error we think are well laid.

The answers and cross-bills of the defendants to the bill of plaintiff were objectionable, and the demurrers thereto should have been sustained.

The issue tendered by the bill for injunction being the validity of the proceedings in the County Court, the sufficiency of

the matters charged in the bill for the relief sought was a question of law. If this sufficiency was to be contested by the defendants, they could have demurred to the bill. But if it be conceded that this question was properly raised by the motion to dissolve the injunction, then upon the dissolving of the writ the bill should have been dismissed, for it is difficult to see what office the bill could serve to perform thereafter. The answers and cross-bills set up matters of fact touching the merits of the lien claims, the same as the complaints of the claimants in the County Court. No triable issue of fact upon the merits was thereby properly raised. The Court, upon dissolving the writ, neither dismissed the bill nor passed upon the demurrers to the answers, but proceeded to judgment on the merits as though the answers were responsive to the bill, and that issues of fact were properly made up.

If it could be admitted that the District Court acquired such jurisdiction of the subject matter as to authorize it to proceed to an adjudication of the whole case, the answers were nevertheless defective in other respects. The following paragraph in the answer or cross-bill of Gardner, one of the defendants, will illustrate the character of some of these objections:

"*Fifth*—Defendant further says that exhibit 'A' attached to plaintiff's complaint, and made a part thereof, is true, and he hereby adopts the same, excepting the title and paragraph 14, as his answer and cross-petition in this case."

The other defendants "adopt" this so-called answer and cross-bill of Gardner "as far as the same may be applicable."

A due regard for brevity in pleadings is certainly to be commended when it intelligently expresses a cause of action or defense, but such a loose and wholesale adoption and re-adoption of exhibits attached to a pleading of the adverse party as far as applicable, and with certain exceptions, is too uncertain to be tolerated under any system of practice. A defendant who becomes *pro hac vice* complainant, must in his cross-bill, set forth the grounds relied upon for affirmative relief with the same strictness as the complainant in his original bill. *Tucker et al.* v. *McCoy*, 3 Col., 286.

It was error to rule the plaintiff to plead to the cross-bills while the demurrers thereto were pending and undisposed of. *Gibson* v. *Smith*, 1 Col., 7.

It is a rule of pleading that a party may not demur and plead at the same time to the same matter, and upon the same principle he should not be compelled to do so.

The seventh assignment is also well taken.

The eighth and tenth assignments are well founded. By the provisions of section 1668 of the General Laws, claimants seeking to enforce mechanics' liens against property, are required to make not only the owner of the property, but all other persons interested in the same premises, parties defendant. Notice to all other lien claimants and interested parties, must be published as the statute requires.

Being a statutory proceeding, the mode thereby prescribed must be specifically pursued. *Decker* v. *Myles,* 4 Col., 566.

The Court erred in decreeing a sale of the premises within ten days. Counsel for plaintiff in error contend that the proper period to be fixed by the Court should be ninety days, the lifetime of an ordinary execution, but this Court has held that, since the act under which these proceedings were had, (G. L., Sec. 1660,) provides that the premises may be sold "within the time and in the manner provided for sales on executions issued out of any Court of record," this must be construed to fix the proper period within which a sale may be decreed in such cases, at twenty days, as provided in Sec. 1417 of the General Laws. *Keystone Mining Co.* v. *Gallagher,* 1 Col. Law Reporter, 460.

In all cases like this where lien claimants have in good faith sought to enforce claims which are meritorious and just, we are reluctant to disturb a judgment in favor of such claim, but where so many and gross errors of law are manifest, as the record herein exhibits, we must uphold the law, however burdensome to litigants.

The judgment is reversed and the cause remanded, with direction to the District Court to vacate the order dissolving the injunction, and to enter an order making the same perpetual.

*Judgment reversed.*

*Thatcher & Gast,* for plaintiff in error.

*J. P. Brockway,* for defendants in error.